**Anne J. HOLOHAN, Plaintiff–Appellant,**

**v.**

**Larry G. MASSANARI, Acting Commissioner of SSA,\* Defendant–Appellee.**

**No. 00–16090.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 2001

Filed April 17, 2001

---

\* Larry G. Massanari is substituted for Kenneth S. Apfel, Commissioner of the Social Security Administration, pursuant to Fed. R.App. P. 43(c)(2).

Phyllis A. Matyi, Larkspur, California, for the plaintiff-appellant.

David W. Ogden, Assistant Attorney General, Robert S. Mueller, III, United States Attorney, Janice L. Walli, Chief Counsel, Region IX, Jeffrey H. Baird, Assistant Regional Counsel, Social Security Administration, San Francisco, California, for the defendant-appellee.

Before: B. FLETCHER, FERNANDEZ, and PAEZ, Circuit Judges.

Opinion by Judge BETTY B. FLETCHER; Partial Concurrence and Partial Dissent by Judge FERNANDEZ.

BETTY B. FLETCHER, Circuit Judge:

Anne Holohan appeals from the district court's grant of summary judgment to the Commissioner of Social Security denying her claim objecting to the termination of her disability benefits, awarded under Title II of the Social Security Act. We reverse and restore her benefits.

### BACKGROUND

On November 28, 1994, Anne Holohan filed an application for Social Security disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433 (the Act). She claimed eligibility for the benefits on the basis of disability due to depression, anxiety attacks, alcoholism, coordination problems, memory problems, loss of physical strength, and concentration problems. On March 1; 1995, the Social Security Administration (SSA) found Holohan

disabled as defined by the Act and eligible to receive disability benefits. In its notice to Holohan, the SSA explained that it "found that drug addiction and/or alcoholism is a contributing factor material to your disability. This means if we had not considered your drug addiction and/or alcoholism, we would not have found you disabled."

In 1996, Congress amended Title II by eliminating drug and alcohol dependency as bases for disability findings. *See* Contract With America Advancement Act of 1996 § 105, 42 U.S.C. § 423(d)(2)(C). In order to implement Congress' mandate, the SSA sent termination notices to persons receiving disability benefits who had been found to be disabled by virtue of drug or alcohol dependency. The notice informed the recipients that their benefits would terminate unless they had another basis to support a disability finding. Holohan received such a notice and requested a redetermination of her claim, asserting that she was disabled within the meaning of the Act, even without considering her alcoholism. The SSA reviewed Holohan's case and concluded that she did not qualify for disability benefits. Holohan filed a request for a hearing, which was held on July 29, 1997.

At the hearing, Holohan was represented by a law student. Holohan testified that she was unable to work due to, among other things, depression and severe anxiety with panic attacks. In his decision, issued on September 25, 1997, the Administrative Law Judge (ALJ) reviewed the evidence of Holohan's medical history and then engaged in the five step sequential evaluation process for evaluating disability claims set forth at 20 C.F.R. § 404.1520.

First, if a claimant is found to be currently working and engaged in substantial gainful employment, she is not disabled under the Title II regulations. *Id.*

§ 404.1520(b). The ALJ found that Holohan was not gainfully employed.

Second, in order to qualify as disabled, a claimant must have a severe impairment. *Id.* § 404.1520(c). The ALJ found that while Holohan had no severe physical impairment, she did have severe mental impairments, namely, dysthymia, and alcohol abuse in full remission.

Third, if a claimant's severe impairment meets or exceeds a listed impairment in Appendix 1 to Part 404 of the regulations implementing Title II, then this is sufficient for finding the claimant to be disabled. *Id.* § 404.1520(d). The ALJ found that Holohan's mental impairments did not meet or exceed the functional limitations listed in the appendix. In considering Holohan's functional capacity, the ALJ specifically found Holohan's statement that her condition had deteriorated since she began her treatment with Dr. Oh to lack credibility, stating that Dr. Oh's treatment records indicated improvement.

Fourth, if a claimant's severe impairment does not qualify as a disability by virtue of meeting or exceeding the requirements of Appendix 1, then the impairment must prevent the claimant from doing past relevant work. Otherwise, the claimant is not disabled under the implementing regulations. *Id.* § 404.1520(e). Giving Holohan "the benefit of all doubt," the ALJ found that she could no longer perform her previous work as a newspaper advertising account executive.

Finally, in order to be disabled, the claimant's impairment must prevent her from doing any other work. In determining whether a claimant's impairment prevents her from doing other work, one must consider the claimant's "residual functional capacity," age, education, and past work experience. *Id.* § 404.1520(f). Considering these factors and relying on the Commissioner's Medical–Vocational Guidelines,

the ALJ found that Holohan "can physically perform work at all exertional levels and mentally she is capable of performing at least simple, repetitive type work." The ALJ therefore concluded that Holohan was not disabled within the meaning of the Act and upheld the SSA's determination that Holohan was not eligible to receive disability benefits under Title II.

In reaching the conclusion that Holohan did not meet or exceed a listing in Appendix 1 (at step three of the evaluation) and that she had sufficient residual functional capacity to perform simple, repetitive work (at step five), the ALJ specifically rejected the opinions of James Oh, Holohan's treating psychiatrist, and Wynne Hsieh, Holohan's primary care provider, that Holohan's severe mental impairments prevent her from working. The ALJ "reject[ed] the opinion of Dr. Oh" concerning Holohan's functional limitations because he found it to be "totally inconsistent with [Dr. Oh's] own treatment notes and records at [San Francisco General Hospital]." He rejected Dr. Hsieh's opinion because she did not have first-hand knowledge of Holohan's impairments and limitations and because, he concluded, it was contradicted by the weight of the most recent evidence in the record.

The Appeals Council of the SSA denied Holohan's request for review, making the ALJ's opinion the final decision of the Commissioner of the SSA. Holohan filed for review of the ALJ's decision in the district court. The district court summarily upheld the ALJ's denial of benefits. With regard to the ALJ's treatment of Drs. Oh and Hsieh's opinions, the district court held that the ALJ "gave specific, legitimate reasons, based on substantial evidence in the record" and so was entitled to reject the opinions of Holohan's physicians. With regard to the ALJ's credibility finding, the district court concurred that Dr. Oh's treatment records indicated that Holohan was improving with treatment rather than deteriorating as she claimed.

The district court had jurisdiction under 42 U.S.C. § 405(g) (providing for district court jurisdiction to review final decisions of the Commissioner of Social Security). Holohan filed a timely notice of appeal. We therefore have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

■■■ We review de novo a district court's decision upholding the Commissioner's denial of benefits. *Harman v. Apfel,* 211 F.3d 1172, 1174 (9th Cir.2000). We must affirm the Commissioner's decision if it is supported by substantial evidence and if the Commissioner applied the correct legal standards. *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir.1999). Evidence can be "substantial" if it is more than a scintilla, even though less than a preponderance. *Id.* at 1098. If the evidence can support either outcome, we may not substitute our judgment for that of the ALJ. *Id.* However, we cannot affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence." *Id.* (internal quotation marks and citation omitted). Instead, we must consider the record as a whole, "weighing both evidence that supports and evidence that detracts" from the Commissioner's conclusion. *Id.* (internal quotation marks and citation omitted).

## DISCUSSION

### A. Opinion Evidence

Title II's implementing regulations distinguish among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (non-examining [or reviewing] physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995); *see* 20 C.F.R. § 404.1527(d). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Lester*, 81 F.3d at 830; 20 C.F.R. § 404.1527(d). In addition, the regulations give more weight to opinions that are explained than to those that are not, *see* 20 C.F.R. § 404.1527(d)(3), and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists, *see id.* § 404.1527(d)(5).

■ In disability benefits cases, physicians typically provide two types of opinions: medical opinions that speak to the nature and extent of a claimant's limitations, and opinions concerning the ultimate issue of disability, i.e., opinions about whether a claimant is capable of any work, given her or his limitations. Under the regulations, if a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also* Social Security Ruling (SSR) 96–2p.[1] An ALJ may reject the uncontradicted medical

opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998) (internal quotation marks and citation omitted). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, "[t]reating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR [§ ]404.1527." SSR 96–2p; *see id.* ("Adjudicators must remember that a finding that a treating source medical opinion is ... inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.... In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").[2] An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she or he provides "specific and legitimate" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. (internal quotation marks and citation omitted). Similarly, an ALJ may reject a treating physician's uncontradicted opinion on the ultimate issue of disability only with "clear and convincing" reasons supported by sub-

1. The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir.1991) (en banc). We will not defer to SSRs if they are inconsistent with the statute or regulations. *Id.*

2. This is not to say that a treating physician's every medical opinion is necessarily entitled

to weight. 20 C.F.R. § 404.1527(d) describes the factors the SSA considers in determining how much weight to give to medical opinions. Under certain circumstances, a treating physician's opinion on some matter may be entitled to little if any weight. This might be the case, for instance, if the treating physician has not seen the patient long enough to "have obtained a longitudinal picture" of the patient's impairments, 20 C.F.R. § 404.1527(d)(2)(i), offers an opinion on a matter not related to her or his area of specialization, *see id.* § 404.1527(d)(5), and presents no support for her or his opinion on the matter, *see id.* § 404.1527(d)(3).

stantial evidence in the record. *Reddick,* 157 F.3d at .725 (quoting *Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir.1993) (internal quotation. marks omitted)). If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide "specific and legitimate" reasons in order to reject the treating physician's opinion. *Id.*

The ALJ rejected the opinions of Dr. Oh, Holohan's treating psychiatrist, and Dr. Hsieh, who had recently taken over as Holohan's primary care physician, in reaching the conclusion that Holohan's impairment did not meet or exceed a listing in Appendix 1 (at step three of the evaluation) and that she had the residual functional capacity to engage in simple, repetitive work (at step five). Both doctors opined that Holohan's impairments presented serious obstacles to her ability to work. Instead, the ALJ relied on the opinions of other examining and reviewing physicians and his determination that Holohan's testimony was not credible.

### 1. *Dr. Oh's Opinion*

██ In a letter dated June 11, 1997, Dr. Oh stated that Holohan's

depressive disorder superimposed by a panic disorder, effectively prevent her from pursuing gainful employment. Specifically, she experiences spells of terror and panic leading to cognitive break-up. She also experiences anxiety, off and on, all day with grave symptoms of depression, including feeling no interest in things, feeling hopeless, and having difficulty making decisions. With these disabling cognitive and affective symptoms, compounded by the stressor of residing with a physically and verbally abusive spouse, markedly impair her ability to function in a work place like she did for nearly 20 years before her current disability.... [Holohan's] ability to concentrate on work related tasks is markedly impaired due to her anxiety

and poor concentration. She is able to maintain rudimentary activities of daily living.

Dr. Oh's letter, in conjunction with his treatment notes, is evidence that Holohan qualified as disabled at step three of the five step inquiry.

In order to qualify as disabled at step three of the evaluation, a claimant must meet or exceed the listed impairments in Appendix 1 to Part 404 of the regulations. 20 C.F.R. § 404.1520(d). In order to meet a listing in Appendix 1 for a mental disorder, a claimant must satisfy criteria in paragraph A of the listings, which medically substantiate the presence of a mental disorder, and the criteria in paragraphs B or C, which describe the functional limitations associated with the disorder which are incompatible with the ability to work. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A. Dr. Oh has diagnosed Holohan with major depression and panic disorder without agoraphobia. She therefore satisfies the paragraph A criteria for both affective disorders and anxiety related disorders. *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04A.1. (depressive syndrome) *with* Diagnostic and Statistical Manual of Mental Disorders (DSM–IV) 345, 349–52, 369 (Michael B. First ed., 4th ed., text rev.2000) (criteria for major depressive disorder), *and* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06A.3. (panic attacks) *with* DSM–IV 429, 430–32, 433–34 (criteria for panic disorder without agoraphobia).

██ In order to satisfy the criteria in paragraph B, Holohan's paragraph A impairments must result "in at least two of the following":

1. Marked restriction in the activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04B; *see also id.* § 12.06B. Dr. Oh's opinion letter provides weighty evidence that Holohan's impairments meet three of the paragraph B criteria. First, Dr. Oh states that Holohan's "social circle is limited to her AA meetings, otherwise she remains significantly socially isolated." The regulations include as examples of impaired social functioning social isolation and the avoidance of interpersonal relationships. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.2. Dr. Oh's statement is evidence that Holohan has "[m]arked difficulties in maintaining social functioning."[3] Second, Dr. Oh states that Holohan's "ability to concentrate on work related tasks is markedly impaired due to her anxiety and poor concentration." This is evidence that

Holohan's impairments would cause her to fail to complete work-related tasks in a timely manner. Finally, Dr. Oh states that Holohan "experiences spells of terror and panic leading to cognitive break up ... [as well as] anxiety, off and on, all day with grave symptoms of depression, including feeling no interest in things, feeling hopeless, and having difficulty making decisions." Dr. Oh concludes that these "disabling cognitive and affective symptoms ... markedly impair · [Holohan's] ability to function in a work place." The regulations explain that the fourth B criterion "refers to repeated failure to adapt to stressful circumstances" common to the work environment. *Id.* § 12.00C.4. They specifically identify making decisions as a stress common to work situations. *Id.* Dr. Oh's opinion is, therefore, evidence that Holohan satisfies the fourth B criterion.[4]

■ Dr. Oh's opinion thus provides evidence that Holohan qualifies as disabled because she meets the impairments listed in Appendix 1. The ALJ rejected Dr. Oh's opinion that Holohan "is markedly impaired with respect to performance of any work activity due to anxiety/panic attacks and poor concentration" because he found it to be "totally inconsistent with [Dr. Oh's] own treatment notes and records at [San

---

**3.** As used in the regulations, "marked" "means more than moderate, but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C. Dr. Oh's use of "significantly" in describing Holohan's social isolation, when considered with his observation that "Holohan's social circle is limited to her AA meetings" describes social isolation that is more than moderate.

**4.** In addition, Holohan's testimony provides evidence that her impairments satisfy the third and fourth paragraph B criteria. Holohan testified that, at the time of the hearing before the ALJ, she was taking a class at City College. She further testified that she had to take her anti-anxiety medication immediately before class so that she wouldn't have a panic attack during the one hour period. In addi-

tion, she explained that she would suffer panic attacks when she studied and when she had "quiet time." This is in keeping with Dr. Oh's treatment notes, which report that Holohan is more prone to have panic attacks when she is inactive. When she had panic attacks while reading, Holohan testified, she was "afraid to go back to the book because I'll reactivate that panic." This testimony is evidence that Holohan's impairments result in an inability to concentrate, resulting in failure to complete tasks in a timely manner, and evidence that in work-like settings, Holohan "decompensates" (i.e., experiences an exacerbation of symptoms, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.4.), and withdraws from the stressor. The ALJ did not find this testimony to lack credibility.

Francisco General Hospital]." The ALJ stated that Dr. Oh's treatment notes "indicate control of panic attacks with Ativan, and a great improvement in [Holohan's] condition. Dr. Oh in fact noted that [Holohan's] panic attack problem increased with inactivity, and that she was happy when she joined the YMCA."

Holohan argues that the ALJ committed legal error in rejecting Dr. Oh's opinion concerning the scope of her limitations. Her argument has merit. As Holohan points out, the ALJ is selective in his reliance on Dr. Oh's treatment notes, exaggerates in his description of their contents, and misattributes statements to Dr. Oh. Although he makes hopeful comments about Holohan's attending classes, Dr. Oh also lists as Holohan's symptoms "demoralization, feeling trapp[ed] ... anxiety ... depressed mood." Dr. Oh never describes a "great improvement in [Holohan's] condition" as the ALJ suggests. While he does state on November 8, 1996, that Holohan is "doing better," he explains that this means "(less [unintelligible] panics—'15% better') but when inactive [upward arrow sign, read: increase in] panic." Finally, the ALJ states that Dr. Oh described Holohan as having "infrequent panic attacks." However, it was not Dr. Oh but some other physician at San Francisco General Hospital who so characterized Holohan's attacks.[5]

Dr. Oh's statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to func-

tion in a workplace.[6] *See, e.g., Kellough v. Heckler,* 785 F.2d 1147, 1153 (4th Cir.1986) (" 'Feels well' and 'normal activity' must be read in context; the claimant has established that she suffered a severe cardiac impairment in 1975. A note entered in November 1975, just one month before she was hospitalized for open heart surgery, also stated that she 'feels well.' Kellough testified without contradiction that her 'normal activity' following her surgery was very limited.").

The ALJ's specific reason for rejecting Dr. Oh's opinion was that it conflicted with Dr. Oh's treatment notes. Although such a conflict could justify a decision not to give the treating physician's opinion controlling weight, *see* 20 C.F.R. §§ 404.1527(c)(2), (d)(2), (d)(4), in this case there is not substantial evidence in the record to support the reason the ALJ gave for rejecting Dr. Oh's opinion. When read in full and in context, Dr. Oh's treatment notes are consistent with his opinion letter. Because substantial evidence does not support the specific reason the ALJ gave for rejecting Dr. Oh's opinion concerning the question of Holohan's disability, we conclude that the ALJ erred in rejecting Dr. Oh's opinion.

## 2. Other Medical Opinions

### a. Examining Physicians

The record reflects the reports of five examining physicians. The reports of two of the examining physicians, those of Drs. Johnson and Solon, support Holohan's claim. In a December 22, 1994 report, Dr. Johnson diagnosed Holohan with moderate

5. The district court also misattributed this quotation to Dr. Oh. The other physician, whose signature is unintelligible, appears to have seen Holohan only three times over the many-year period at issue in this case.

6. For this reason, we reject the government's argument that Dr. Oh's opinion is contradicted by Dr. Kristen Shaeffer's notation that Holohan's panic attacks were "alleviated" by Avitan and a statement by another physician who occasionally treated Holohan that Holohan was "feeling well" and "sleeping well."

clinical depression. He stated that Holohan's prognosis was unclear, but that it was "difficult to imagine her functioning effectively in any sustained competitive employment setting in her present condition." In a report of February 6, 1995, Dr. Solon diagnosed Holohan with recurrent chronic depression, and concluded that she "would have considerable difficulty maintaining the sustained concentration and persistence necessary to maintain a normal workweek." Dr. Solon did, however, predict that "with appropriate psychiatric treatment, her symptoms will likely remit within six months to a year."[7]

Of the remaining three examining physicians, two concentrated only on the physical manifestations of Holohan's impairments. In a report dated July 26, 1996, a physician (whose signature is unintelligible) notes a moderate gait disturbance, but does not respond to a question on the form concerning evidence of psychiatric impairment. Similarly, in a report dated August 24, 1996, Dr. Katzenberg, a neurologist, found that Holohan suffered from no objective sensory motion deficit which would prevent her from working. He acknowledged that Holohan had depression and anxiety, but did not consider whether Holohan's psychiatric impairments would interfere with her ability to work. These reports shed no light on whether Holohan's mental impairments do or do not render her disabled.

Finally, on July 24, 1996, Dr. Flach, a psychologist, diagnosed Holohan as being "mildly" anxious and depressed. He reported that he found no history of major depression or psychotic episode and that he believed that Holohan might be able to perform some simple work. However, Dr. Flach's statement about Holohan's psychiatric history is flatly contradicted not only by the record but by his own notation that Holohan had reported a history of psychiatric services for depression and anxiety, including twice weekly visits to a psychiatrist between 1990 and 1993, and prescriptions for antidepressants. Moreover, Dr. Flach states only that, with her impairments, Holohan "may" be able to perform at least some simple if not detailed tasks.[8]

### b. Reviewing Physicians

The record also contains the reports of three reviewing physicians, those of Drs. Burdan, Hansell, and Hsieh. Doctors Burdan and Hansell simply checked boxes on form reports and gave no significant supporting explanation for their conclusions. Dr. Hansell's report, dated August 12, 1996, simply states conclusorily that Holohan has no severe impairments. In contrast, in a report dated February 23, 1995, Dr. Burdan found Holohan severely impaired, but he indicated that he did not have enough information to determine whether Holohan met two of the four category B criteria in Appendix 1.[9] Dr. Burdan's report is, therefore, neutral on the question of whether Holohan qualified as disabled at step three of the five step inquiry.

---

7. Dr. Solon's optimistic prognosis was not borne out, as is shown by Drs. Oh and Shaefer's treatment notes, as well as Dr. Oh's 1997 letter.

8. The ALJ mischaracterized Dr. Flach's opinion by changing "may" to "could" perform simple if not detailed tasks.

9. Dr. Burdan found that Holohan suffered from an organic mental disorder, depressive syndrome, and a substance abuse disorder. This is sufficient to satisfy three of the paragraph A criteria in Appendix 1. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02, 12.04, 12.09. With regard to the paragraph B criteria, Dr. Burdan's report indicates only moderate limitation in two of the four paragraph B categories (B1 and B2, see supra), marked limitation in one (B3, see supra), and insufficient evidence to make a determination in the remaining category (B4, see supra).

Unlike Drs. Burdan and Hansell, Dr. Hsieh wrote a letter explaining her opinions concerning Holohan. At the time she wrote on Holohan's behalf, Dr. Hsieh had just recently taken over as Holohan's primary care physician. She explained that she had taken over Holohan's case from Dr. Kristen Shaeffer, with whom Holohan had a "long, close relationship."[10] Based on a review of Holohan's file, in a letter dated July 9, 1997, Dr. Hsieh stated that her

> impression is that Mrs. Holohan has had, and continues to have, illness of great severity. In addition to being a victim of domestic abuse, Mrs. Holohan has diseases that include depression, insomnia, severe anxiety disorder and panic attacks that were described as "quite debilitating" by a psychologist in 7/96.... The implication from all reports is that Mrs. Holohan continues to suffer from severe psychiatric disease which would hinder her from maintaining a job.

The ALJ rejected Dr. Hsieh's opinion because "Dr. Hsieh admitted that he [sic, she] did not have first hand knowledge of [Holohan's] impairments and limitations" and because "the weight of the most recent evidence of record indicates improvement in her mental condition and panic attacks, particularly when separated from her unfortunate marital environment, and the record clearly does not contraindicate performance of work activity." ▮

▮ We conclude that the ALJ's specific reason for rejecting Dr. Hsieh's medical opinion is not supported by substantial evidence. In concluding that the most recent medical evidence indicates that Holohan was improving, the ALJ selectively relied on some entries in Holohan's records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment.[11] In addition, the ALJ relied on the medical opinions of examining and reviewing physicians (besides that of Dr. Hsieh) to the exclusion of Dr. Oh's more recent opinion that Holohan's impairments are quite severe. The only medical opinions in the record that conflict with Dr. Oh's are those of Dr. Flach, who stated that Holohan had only "mild" anxiety and depression, and Dr. Hansell, who conclusorily indicated that Holohan had no severe impairments. However, these opinions—of an examining physician who examined Holohan only once and a reviewing physician who merely checked boxes without giving supporting explanations—are insufficient to outweigh the opinion of a treating physician who cared for Holohan over a period of time and who provided an opinion supported by explanation and treatment records. *See* 20 C.F.R. §§ 404.1527(d)(2), (3). When Dr. Oh's opinion is given appropriate consider-

---

10. Dr. Shaeffer treated Holohan for over two years and saw her regularly. We note that although Dr. Shaeffer did not write an opinion letter on behalf of Holohan, the record does contain her treatment notes. Although he mentions them in passing, the ALJ does not appear to have considered Dr. Shaeffer's notes, which do not indicate measurable improvement in Holohan's condition during the period at issue in this case, *see* Kristen Shaeffer, Treatment Note for Anne Holohan (April 3, 1997) (indicating severe anxiety disorder); *id.* (June 26, 1997) (indicating severe anxiety disorder with panic); *id.* dated June 19, 1996 (same); *id.* (May 28, 1996) (same; noting Holohan was "anxious, tearful"); *id.* (April 24, 1996) (same; noting Holohan "continues with panic attacks").

11. The ALJ specifically mentions two entries, one dated December 12, 1996, the other dated February 6, 1997, by one physician which indicate that Holohan's depression and anxiety are stable and that she "feels well." This physician appears to have treated Holohan only a few times. By contrast, the ALJ does not mention the many entries that indicate continued, severe psychiatric problems. *See, e.g., supra* note 10.

ation, it cannot be said that "the weight of the most recent evidence of record indicates improvement in her mental condition and panic attacks." Therefore, there was not substantial evidence to support the ALJ's reason for rejecting Dr. Hsieh's opinion.

## B. Credibility Determination

 While an ALJ is responsible for determining the credibility of a claimant, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons. *Reddick*, 157 F.3d at 722. In addition, the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony. *Id.* The evidence upon which the ALJ relies must be substantial. *See id.* at 724. Holohan argues that the ALJ's negative credibility finding is not supported by the evidence he cites. She is correct.

 The ALJ found that Holohan's testimony that her symptoms had gotten worse since she began treatment with Dr. Oh lacked credibility. He specifically identified Dr. Oh's treatment records as evidence that conflicted with Holohan's testimony. However, as we discuss above, the ALJ selectively quoted from Dr. Oh's treatment records and misattributed statements to him. This evidence provides no support for the ALJ's credibility finding. In addition, the ALJ asserts that Holohan "apparently sought little mental health or other medical treatment until after receipt of her notice of termination of disability [in 1996]." The ALJ cites no specific evidence to support this claim, but, in any case, the claim is belied by the record. There is evidence in the record that Holohan had seen a psychiatrist twice weekly from 1990 to 1993 for depression and anxiety, that

she had been in a half·way house for recovering alcoholics in 1994, that she saw a psychiatrist in 1994, that she had been seeing . Dr. Shaeffer regularly between 1994 and 1996, and that she began going to the stress clinic sometime in 1995. The only other support the ALJ offers for his credibility finding is his statement that the "record in general indicates improvement since January 1996." However, general findings are an insufficient basis to support an adverse credibility determination. *See Reddick*, 157 F.3d at 722 (citing *Lester*, 81 F.3d at 834).

Because the ALJ's credibility finding is not supported by substantial evidence, we conclude that the ALJ's credibility determination was erroneous.

## C. Use of the "Grids"

 The government argues that, at step five of Holohan's disability determination, the ALJ was correct to rely on the Medical–Vocational Guidelines (the "grids") to determine whether there was work that Holohan could perform despite her impairments. If the grids accurately and completely describe a claimant's impairments, an ALJ may apply the grids instead of taking testimony from a vocational expert. *Reddick*, 157 F.3d at 729. If they do not, then the ALJ must also hear testimony from a vocational expert. *Id.* The grids are based only on strength factors. *Id.* & n. 11 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)). Thus they are sufficient only when a claimant suffers only from exertional limitations. *Id.*; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 200.00(b), (e). The functional limitations caused by anxiety, depression, concentration, and memory impairments are nonexertional limitations. 20 C.F.R. § 404.1569a(c)(i)-(iii).[12] These are the

---

12. In concluding that the ALJ properly relied on the grids, the district court ignored the regulations' clear statement that psychiatric

impairments of the sort Holohan suffers are nonexertional limitations.

sorts of impairments at issue in Holohan's case. Indeed, the ALJ found that Holohan had no severe physical impairments and that her only severe impairments were psychiatric. By relying entirely on the grids to determine that there was work that Holohan was capable of performing with her limitations, the ALJ committed clear legal error.

## D. Procedural Due Process Claims

■ The Supreme Court has held that applicants for social security disability benefits are entitled to due process in the determination of their claims. *See Richardson v. Perales*, 402 U.S. 389, 398, 401–02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). We recognize this principle as governing administrative adjudications of social security benefit claims. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir.1990) ("An applicant for social security benefits has a property interest in those benefits."). The Supreme Court also has held that procedures for terminating a person's receipt of social security disability benefits must satisfy the requirements of due process. *See Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). What process is due a claimant or recipient of disability benefits depends upon a weighing of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

The March 1, 1995 notice informing Holohan that the SSA had found her eligible for Social Security disability benefits ex-

plained that the SSA found Holohan's drug and alcohol addictions "contributing factor[s] material to" her disability. This meant, the SSA notice explained, that if the SSA had not considered Holohoan's drug addiction and alcoholism, it would not have found her eligible for disability benefits. The notice also informed Holohan that she had the right to appeal the SSA's determination if she "disagree[d] with this decision that drug addiction and/or alcoholism contributes to your disability." Holohan correctly notes that a determination that drug addiction and alcoholism "contributes" to a claimant's disability is importantly different from a determination that they are "contributing factors material to" a claimant's disability. In the former case, but not in the latter, a claimant may be disabled notwithstanding her or his alcoholism or drug abuse.

■ Holohan makes two arguments concerning the March 1, 1995 notice. First, she claims that because the notice did not inform her that she could appeal the SSA's decision if she believed that her alcoholism was not a "contributing factor material to" her disability, the notice violated her right to procedural due process. Second, she argues that the notice violated her due process rights because it failed to warn her that if she failed to appeal the SSA's materiality finding, her benefits would be subject to termination if Congress later removed alcoholism as a basis for disability benefit awards.

We conclude that Holohan lacks standing to assert the first due process claim, for she fails to allege any injury that resulted from the discrepancy between the SSA's notice of its materiality finding and its notice that Holohan has a right to appeal the SSA's determination that her alcoholism "contributes" to her disability. *See Heckler v. Mathews*, 465 U.S. 728, 738, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984) ("In

order to establish standing for purposes of the constitutional 'case or controversy' requirement, a plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, ... and that the injury is likely to be redressed by a favorable decision ...." (internal quotation marks and citations omitted)).[13]

■ With regard to Holohan's second claim, applying the *Mathews* factors, we conclude that the SSA's failure to inform Holohan in its eligibility notice that her failure to appeal the SSA's materiality finding would subject her benefits to termination if Congress later eliminated alcoholism as a basis for disability benefit awards did not violate Holohan's right to due process. There is no disputing that a disability benefits recipient's interest in continued receipt of her or his benefits is great. *See Mathews,* 424 U.S. at 342, 96 S.Ct. 893. However, in implementing the congressional mandate to exclude alcoholism and drug abuse as bases for disability benefits awards, the Commissioner has taken steps to minimize the risk of erroneous deprivation by sending termination notices to affected recipients and by affording them a right to contest the termination of their benefits at a hearing at which they may demonstrate that they are disabled even apart from any alcoholism or drug addiction. Moreover, the additional notice Holohan proposes is unworkable. It would require the Commissioner to read tea

leaves and forecast which current eligibility criteria Congress may someday revoke.

For these reasons, we hold that the March 1, 1995 notice did not violate Holohan's right to procedural due process.

\* \* \*

■ The ALJ committed reversible error. We must decide, however, whether to remand for further proceedings and additional evidence or for an award of benefits. The decision whether to remand for further proceedings or for an award of benefits is within our discretion. *Reddick,* 157 F.3d at 728. We have repeatedly held that a remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. *See, e.g., id.; Ghokassian v. Shalala,* 41 F.3d 1300, 1303 (9th Cir.1994); *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir.1990); *Varney v. Secretary of HHS,* 859 F.2d 1396, 1399 (9th Cir.1988). We adopted this rule because we "recognized the importance of expediting disability claims." *Ghokassian,* 41 F.3d at 1303. Indeed, in cases in which it is evident from the record that benefits should be awarded, remanding for further proceedings would needlessly delay effectuating the primary purpose of the Social Security Act, "to give financial assistance to disabled persons because they are without the ability to sustain themselves." *Gamble v. Chater,* 68 F.3d 319, 322 (9th Cir.1995) (internal quotation marks and citation omitted).

---

13. The fact that the March 1, 1995 notice found Holohan eligible for disability benefits would not in itself preclude her from alleging injury in fact. The Social Security Independence and Program Improvements Act of 1994 imposed many limitations on the receipt of benefits by persons found eligible in cases in which alcoholism or drug addiction was a contributing factor material to the individual's disability. *See* Pub.L. No. 103–296

§ 201(a), 108 Stat. 1464, 1490 (1994) (codified in scattered subsections of 42 U.S.C. § 405) (imposing, among other things, treatment requirements, payment of benefits to a representative payee, and a thirty-six month limit on the receipt of benefits). However, Holohan does not argue that the restrictions imposed upon her based on the SSA's materiality finding caused her injury.

In this case, when proper deference and weight is given to the opinion of Holohan's treating psychiatrist and when Holohan's testimonial evidence is properly considered, we conclude that Holohan qualifies as disabled at step three of the five step evaluation process. When properly considered, the evidence also indicates that a determination of not disabled would not be supported by substantial evidence.

### CONCLUSION

Because the record does not contain substantial evidence that would support a finding that Holohan is not disabled, and because the record does contain evidence that supports a finding that Holohan meets the Appendix 1 listings, we remand this case to the district court with instructions to remand to the ALJ for an award of benefits.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

FERNANDEZ, Circuit Judge, Concurring and Dissenting:

While intertwined with and buried in an intricate discussion of the rules, regulations, and rulings, this case is still another example of this court's insistence that it be the ultimate trier of fact in social security disability cases. Thus, although the ALJ, who is the true trier of fact, the Appeals Council and the district court judge were all satisfied that Holohan is not disabled, except, perhaps, for alcoholism,[1] we decide that none of them understood the law or the evidence, and, therefore, not only reverse but also direct the payment of benefits. While I agree that the ALJ did not properly touch all of the bases in deciding this case, I do not agree that we should reweigh all of the evidence and grant benefits.

As is common with triers of fact, the majority opinion marshals every bit of evidence that would support its decision that Holohan should get benefits, and denigrates the opinions of the doctors who do not agree with that. For example, Dr. Hsieh's opinion is accepted, though she wrote very little and had never seen Holohan, while other physicians are dismissed with the comment that they are wrong, or conclusory, or checked the boxes. None of that is unusual. We regularly engage in complex locutions as we rummage through records and reweigh each piece of evidence, with no real deference whatsoever to those who work with and decide social security disability cases on a day-to-day basis. That approach enables us to cast a brume over the fact that we are actually retrying cases. However, it is one thing to find error; it is quite another to decide that the trier of fact, the expert agency, and the district court have perceptions of the record so inferior to ours that benefits must be ordered with no further ado.

Holohan does seem to be a needy person, and I doubt that she could perform jobs in the national economy. Were my impressions the test, were I an ALJ, I would so find. They are not, and I am not. Thus, while there were errors at the administrative level, I cannot agree that we should take it upon ourselves to order an award of benefits. At most, I would return this case for further proceedings.

Therefore, while I agree that some errors were committed, I dissent from the direction that benefits be awarded at this time.

1. Originally, the ALJ had held that alcoholism was a contributing factor material to any disability, but in the proceeding at hand the ALJ determined that alcoholism did not affect her. On the other hand, the ALJ found that she was not disabled at all.