**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARY M. KHAN, | No. 19-17473 |
| Plaintiff-Appellant, | D.C. No. 1:19-cv-00005-ACK-WRP |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, District Judge, Presiding

Submitted February 4, 2021**
Honolulu, Hawaii

Before: CLIFTON, R. NELSON, and COLLINS, Circuit Judges.
Dissent by Judge COLLINS

Plaintiff Mary M. Khan appeals from the district court's order affirming the

Commissioner of Social Security's final decision denying Khan's application for

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

benefits under Titles II and XVI of the Social Security Act. Reviewing the district court's order *de novo*, we will reverse only if the Administrative Law Judge's ("ALJ") decision "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citations omitted). Where "the evidence is susceptible to more than one rational interpretation," this court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Id.* at 1111 (citation omitted).

Khan challenges the weighing of three physicians' opinions. First, Khan objects to the weighing of treating physician Dr. Myers' opinions. Due to contradicting opinions in the record, the ALJ could only discount Dr. Myers' opinion "by giving specific and legitimate reasons" supported by substantial evidence. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation omitted).[1] The ALJ set out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting

---

[1]Khan argues our more exacting standard should apply to Dr. Myers' August 2016 opinion. But this opinion was offered as a rebuttal to Dr. Jonas's opinion and was; therefore, inherently controverted. Further, even if the lower standard applied, given the conclusory nature of this opinion the ALJ did not err in discounting it. *See Ford*, 950 F.3d at 1154–55.

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Khan also concedes the ALJ gave specific reasons but argues they were not legitimate. The ALJ properly discounted Dr. Myers' opinions as they were conclusory or cursory. *See Ford*, 950 F.3d at 1154–55 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)); *see also* 20 C.F.R. § 404.1527(c)(3).

Second, Khan argues that the ALJ improperly discounted the opinion of Dr. Winger by substituting the ALJ's medical judgment for that of the doctor. However, the ALJ merely noted an inconsistency between (1) the test results Dr. Wingert outlines in his report and his own conclusions which he stated were based, in part, on the claimant's self-reports; and (2) his conclusion and claimant's conservative treatment regimen. An ALJ may reject an opinion if it is based "to a large extent" on the claimant's self-reports. *Tommasetti*, 533 F.3d at 1041 (citation omitted). An ALJ may also consider conservative treatment when evaluating a medical expert's conclusions. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). As such, the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting Dr. Wingert's conclusions. *See Ford*, 950 F.3d at 1154–55.

Third, Khan argues that the forms Dr. Kiyota completed for the State of Hawaii Department of Human Services should not have been discounted by the ALJ. The ALJ reasonably assigned less weight to Dr. Kiyota's check-box forms because of their lack of explanation and because they contradicted her longer-form evaluation. *Id.* at 1155; *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ must resolve conflicts between medical opinions and can look to the level of explanation for the various opinions to resolve conflicts).

Khan also argues that the ALJ improperly rejected her symptom testimony regarding her inattention and need for hour-long breaks throughout the day. The ALJ specified that while he found Khan's symptoms to justify the limitations in the residual functional capacity, they did not justify any further limitations or a finding of disability. He gave four reasons for rejecting the extent of symptoms to which Khan testified. Together they were "specific, clear and convincing reasons" supported by substantial evidence to discount "the claimant's testimony about the severity of her symptoms." *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). First, the ALJ noted Khan's conservative treatment. This reason alone can be a sufficient reason supported by substantial evidence to discount claimant's symptom testimony. *See id.*; *see also Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) ("conservative treatment" is

4

sufficient to discount claimant's testimony regarding severity of impairment);

*Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding subjective pain complaints properly discredited where claimant received "minimal" and "conservative" treatment). Second, the ALJ noted Khan's focused demeanor at the hearing as undermining the symptom testimony. Third, the ALJ considered Khan's own statements regarding her activities of daily life which included caring for minor children and maintaining a household. *See Rollins*, 261 F.3d at 857 (holding taking care of children and maintaining a household to be a clear and convincing reason to discredit symptom testimony). Fourth, the ALJ looked to the objective medical evidence. *Molina*, 674 F.3d at 1113 (comparing subjective symptom results to findings in clinical evaluations in upholding the ALJ's adverse credibility determination).

The ALJ's decision was supported by substantial evidence.

**AFFIRMED.**

5

*Khan v. Saul*, No. 19-17473

COLLINS, Circuit Judge, dissenting:

This is a textbook case of cherry-picking, in which the Administrative Law Judge ("ALJ") unevenly applied a sharply critical lens to the overwhelming evidence supporting disability claimant Mary Khan, while ignoring that those same criticisms also applied to the small subset of evidence on which the ALJ selectively relied. Specifically, the administrative record contains at least 13 reports from the relevant time period from either Khan's treating psychologist or from one of two examining psychologists. Of these 13 reports, 12 of them concluded that Khan's severe mental and emotional difficulties would make it difficult for her to work on a full-time basis of eight hours per day, five days per week. The ALJ discounted these 12 reports largely on the ground that they were supposedly lacking in sufficient clinical detail. Instead, the ALJ chose to give "significant" weight to the single report by an examining psychologist that reached a different conclusion from the other 12, as well as to a conclusory opinion of a non-examining psychiatrist. The ALJ did so even though these two opinions were *less* detailed than some of those he discounted as lacking sufficient detail. The Appeals Council then upheld the ALJ's decision and uncritically adopted his relevant findings. Because this kind of markedly uneven evaluation of the record violates applicable administrative-law standards, I would vacate the ALJ's denial of benefits and

remand.  I therefore respectfully dissent.

1.  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."[1]  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)–(2).  More weight is also given "to opinions that are explained than to those that are not."  *Holohan*, 246 F.3d at 1202; 20 C.F.R. § 404.1527(c)(3).  "[I]f a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight."  *Holohan*, 246 F.3d at 1202; 20 C.F.R. § 404.1527(c)(2).  But "'if the treating doctor's opinion is contradicted by another doctor'"—even a non-examining doctor—"the ALJ may discount the treating physician's opinion by giving 'specific and legitimate reasons' that are supported by substantial evidence in the record."  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation omitted).  The ALJ likewise must give specific and legitimate reasons for discounting the opinion of an examining physician or psychologist.  *Id*.

---

[1] These principles apply equally to psychologists.  *See* 20 C.F.R. § 404.1527(a)(1) (defining "[m]edical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *id*. § 404.1502(a)(2) (including "[l]icensed psychologist" among "[a]cceptable medical source[s]").

at 1155. The ALJ failed to provide such reasons for rejecting the conclusions of Khan's treating psychologist, as well as those of two examining psychologists. Instead, the ALJ selectively applied his criticisms in a way that produced an internally inconsistent and slanted analysis of the medical evidence.

a. Between May 2013 and August 2016, Khan's treating psychologist, Dr. Mary Myers, prepared four reports indicating that Khan's severe mental and emotional problems prevented her from working full time, all four of which the ALJ afforded less than full weight. The ALJ stated that he only afforded them "some weight" because Dr. Myers assertedly did "not substantiate many of her conclusions" and did "not provide detailed clinical findings to support her conclusion[s]." This is a reasonable criticism to apply to two of Dr. Myers's reports, because her May 2013 letter included few details, and her June 2016 report was primarily a check-the-box form. But Dr. Myers's two other reports were among the most detailed in the record, and they explained how and why Khan's mental conditions impeded her ability to handle a full-time work schedule.

Specifically, Dr. Myers's August 2014 report noted that Khan's complaints and symptoms of "[a]nxiety, fear, worry, hypervigilance, recurrent intrusive recollections of past traumas/deaths, [and] grief" resulted from her history of "stress of being a single [mother] to 8 kids"; the deaths of her first husband, a child, two sisters, and both parents; domestic violence by her second husband; and

3

a custody battle to reunite with her children after involvement with Child Protective Services. Dr. Myers stated that, because Khan "continues to struggle [with] past traumas" and "is most likely at or near her limit for coping [and] stressors of any kind," Khan "may not be able to" understand and remember simple work instructions, maintain regular job attendance, and persist at simple and repetitive work tasks under ordinary supervision "consistently on [a] daily basis for employment." Dr. Myers therefore concluded that Khan was "probably not" capable of coping with a low-demand, entry-level job "on a full time consistent basis in an employment situation." The ALJ, however, disregarded these statements and instead focused on the irrelevant fact that the August 2014 report also mentioned several positive traits displayed by Khan, such as the fact that she has a "pleasant" disposition and takes care of her children. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161–62 (9th Cir. 2014) (positive observations "must be 'read in context of the overall diagnostic picture' the provider draws" (citation omitted)).

In her August 2016 report two years later, Dr. Myers identified specific limitations in Khan's mental functioning, including "difficulty sustaining her attention to complete tasks"; a "very limited" threshold for stress, which "compromis[es] her ability to learn new tasks, remember what she has learned, and make decisions"; a "lack of self-confidence"; "depressive symptoms"; and "dissociative episodes in which she is not present in the sense of being aware of

4

what's going on in her surroundings." These limitations led Dr. Myers to the conclusion that, as she found in August 2014, Khan could not consistently understand and remember instructions, maintain regular attendance, or persist in simple and repetitive tasks—*i.e.*, Dr. Myers did "not expect that Mary could maintain an 8 hour work day for 5 days a week."

In view of these reports, the ALJ's assertion that Dr. Myers did not substantiate her conclusions and did not provide "detailed clinical findings" is not supported by substantial evidence. *Cf. Ford*, 950 F.3d at 1154–55 ("'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" (citation omitted)).

b. But the ALJ's error goes beyond that. Even if the ALJ's criticism had some validity, the ALJ cannot legitimately discount one report for its supposedly conclusory nature while crediting a contradictory report that suffers from the same deficiencies. *See, e.g., Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (ALJ may not reject examining psychologist's opinion on the ground that it was based on "limited observation" of the claimant when the competing opinion accepted by the ALJ was based on no examination of the claimant). Strikingly, the ALJ here gave "significant weight" to examining psychologist Dr. Heide Kiyota's August 14, 2014 report—the only report by a treating or examining practitioner that found

5

Khan capable of full-time work, and the only one of Dr. Kiyota's *eight* reports that came to that conclusion—even though its level of detail was not materially different from Dr. Myers's August 2014 and August 2016 reports.

In her August 2014 report, Dr. Kiyota described Khan as anxious and depressed but friendly, exhibiting "good hygiene," able to relate to others, and capable of doing chores and caring for her children. She also indicated that Khan's cognitive status was within normal limits and rated her global assessment of function ("GAF") at 55 out of 100. In affording the report "significant weight," the ALJ reasoned that the report's "conclusions are supported by [Dr. Kiyota's] own findings, which are based on her observation of [Khan] on several occasions" and that the report was "detailed and well-reasoned." This conclusion is indefensible. The descriptions in Dr. Kiyota's August 2014 are *less* detailed than Dr. Myers's August 2014 report, which was filled out on an *identical* form.[2] Moreover, Dr. Kiyota had observed Khan on far fewer occasions than Dr. Myers, who by then had observed her once or twice per month for nearly two years. In other words, the reasons Dr. Kiyota's report was given "significant weight" applied with even greater force to Dr. Myers's August 2014 report, but the ALJ failed to grant the latter the same weight. This kind of obviously inconsistent and uneven

[2] The only notable detail that Dr. Kiyota's report added was that it gave Khan a GAF rating, whereas Dr. Myers's report did not.

6

evaluation of the evidence does not constitute a "specific and legitimate reason" for rejecting the treating psychologist's opinion. *Ford*, 950 F.3d at 1154.[3]

The same uneven application of criticisms is reflected in the ALJ's decision to give "significant" weight to the testimony of Dr. Alfred Jonas, a non-examining physician, who opined in July 2016 that Khan had no functional limitations. This testimony, however, was based on Dr. Jonas's review of incomplete records, from which at least seven of the most recent reports by Khan's treating and examining psychologists were missing. The missing records included Dr. Myers's June 2016 report, which opined that Khan had "marked" limitations on her ability to accept instructions and respond appropriately to criticism, deal with normal work stress, and carry out detailed instructions. And, of course, Dr. Myers's August 2016 report—which she prepared in response to Dr. Jonas's testimony—did not yet exist. Dr. Jonas was also missing six of Dr. Kiyota's reports, all of which opined that Khan was incapable of working full time, and the last two of which—the September 2015 and March 2016 reports—concluded that Khan had regressed to the point of being unable to work at all. After Dr. Jonas was given these additional records, he confirmed in September 2016—in a report that was even more

---

[3] Further, in light of the three prior and four subsequent opinions by Dr. Kiyota concluding that Khan could not work full time, "it [was] error for [the] ALJ to pick out [the single] isolated instance[] of improvement over a period of . . . years and to treat [it] as a basis for concluding [Khan] is capable of working." *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

7

conclusory than some of the contradictory reports the ALJ had discounted for their supposedly insufficient detail—that his opinion had not changed. Thus, just as with Dr. Kiyota's August 2014 report, the ALJ did not require from Dr. Jonas the same level of supporting explanation and detail that the ALJ demanded from any report that disagreed with the ALJ's conclusion. An ALJ cannot justify his or her preferred conclusion by selectively discounting only the "evidence in the record that suggests an opposite result." *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

c. The ALJ's impermissible cherry-picking is further illustrated by his effort to use *parts* of Dr. Myers's August 2014 report to criticize her later August 2016 report. The ALJ stated that, in contrast to the earlier report, Dr. Myers's August 2016 report gave fewer "detailed findings to support her conclusions." As examples of the sort of "detailed findings" he was looking for, the ALJ pointed to the August 2014 report's statements that Khan had certain positive traits: she "performs all [activities of daily living], provides for needs of her 8 children as a single parent, [and] manages her own funds"; has an excellent ability to relate, engages with others, and is pleasant; displays an "appropriate range of emotions given topics discussed"; and has a well oriented cognitive status and an average estimated IQ functioning. The ALJ's suggestion that the August 2014 report was more detailed is unfathomable, because the August 2016 report undeniably

8

contained *more* detail substantiating Dr. Myers's conclusions than did the earlier report. Indeed, Dr. Myers created the August 2016 report in *response* to a request to expound upon the conclusions contained in the August 2014 report. In fact, the only discernable difference between the details contained in these two reports—both of which ultimately concluded that Khan could not sustain full-time employment—is that the August 2014 report also describes areas of *ability* rather than just areas of disability. This point further confirms the inescapable conclusion that, under the ALJ's ruling, a report had an adequate level of "detail" if it conformed to the ALJ's preferred conclusion that Khan was capable of full-time work, and it had insufficient detail if it did not.

In addition to failing to assess the evidence in a consistent and even-handed manner, the ALJ also failed to recognize that the cited descriptions of Khan's positive attributes are non-responsive to the question of whether Khan can work full time. For example, the ALJ points to Dr. Myers's description of Khan's ability to get along with others, provide for her children, and perform simple repetitive tasks, and the ALJ concluded that these points are inconsistent with the conclusion that Khan could not handle full-time work. But the question was never whether Khan was able to work for short periods of time; it was whether she could consistently work on a full-time basis, and almost every report of a treating or examining psychologist concluded that she could not. *See Smolen v. Chater*, 80

9

F.3d 1273, 1284 n.7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."). In other words, the "ALJ improperly cherry-picked some of [the practitioners'] characterizations of [Khan's] rapport and demeanor instead of considering these factors in the context of [their] diagnoses and observations of impairment." *Ghanim*, 763 F.3d at 1164; *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (a reason for rejecting an opinion is not "legitimate" if it is "not responsive"); *Holohan*, 246 F.3d at 1205 (criticizing an ALJ in part for being "selective in his reliance" on a physician's notes, and stating that a physician's "statements must be read in context of the overall diagnostic picture he [or she] draws.").

2. Similar problems affected the ALJ's selective crediting of the sole report of Dr. John Wingert, who examined Khan in January 2015. To the extent that Dr. Wingert opined that Khan could "maintain adequate concentration and attention in a structured setting" and that she "demonstrated cognitive ability to make simple work related decisions," the ALJ concluded that Dr. Wingert's opinions were substantiated by his observations during the examination. But the ALJ then discredited Dr. Wingert's opinion that Khan's "depressive symptoms might limit her ability to complete a normal workday," which the ALJ found was "mainly

10

derived from [Khan's] subjective reports," as opposed to her performance on Dr. Wingert's intelligence, cognitive functioning, and personality examinations. The ALJ's analysis overlooks the fact that, in addition to Khan's self-reports, Dr. Wingert also relied on his direct observations of Khan during their examination. For example, Dr. Wingert stated that "[f]rom the onset of the session, [Khan] appeared to be close to tears at times during the interview, and there was a close-to-the-surface sense of irritability evident"; that Khan "maintained a serious and intense composure and one does get the impression of an individual experiencing a high level of adjustment difficulties"; that, based on the "Wechsler Adult Intelligence Scale – IV," Khan's "[w]eaknesses were evident on the subtests making up the Processing Speed Index, which scored within the Borderline range, and this involves the speed of mental and graphal motor processing"; and that "one does get the impression of an individual who is functioning at a somewhat reduced level of psychological efficiency." These comments all derived from observation, not self-report. Moreover, we have repeatedly emphasized that psychological evaluations, by their nature, "will always depend in part on the patient's self-report." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). But the most troubling aspect is that the ALJ found Dr. Wingert's descriptions of Khan's *positive* attributes to be backed up by his clinical observations, but then ignored Dr. Wingert's clinical observations when they emphasized the *limitations* associated

11

with Khan's severe mental difficulties. Once again, the conclusion is inescapable that the ALJ inconsistently evaluated the medical opinions in this case based on whether he agreed with their ultimate conclusions.[4]

3. The ALJ's errors in evaluating the medical evidence necessarily vitiate the ALJ's evaluation of Khan's testimony describing her symptoms and limitations, because a proper assessment of that evidence would reasonably be expected to affect the overall evaluation of that testimony. For example, whether Khan's treatment was "conservative" might be viewed differently depending upon the assessment of the underlying conditions. I would require that Khan's testimony be re-evaluated on remand after a proper weighing of the medical evidence. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). I would note, however, that the ALJ's reliance upon his lay impression of Khan's psychological condition during her testimony is also questionable. *Cf. Montijo v. Secretary of Health & Human Servs.*, 729 F.2d 599, 602 (9th Cir. 1984) ("The administrative

---

[4] Little, if any, weight can be given to the ALJ's discussion of the reports of two non-examining "State agency psychological consultants." Although the ALJ acknowledged that these psychologists "were unable to consider the evidence added after their review," the ALJ nonetheless proceeded to conclude that "their assessment remains supported in some respects." Given that the ALJ did not *specify* which aspects of their assessment were supported and which ones were not, their evaluations provide no basis for rejecting the assessments of the treating and examining psychologists. The ALJ merely mentioned their statement that Khan could perform particular tasks, but that limited point did not speak to the grounds for the other psychologists' assessment that Khan's psychological problems would prevent her from working full time.

law judge's observation of the claimant at the hearing, at least in cases involving alleged psychological disability, does not provide a sufficient reason to reject the otherwise uncontroverted medical evidence.").

\*     \*     \*

I recognize that the findings of ALJs are subject to a highly deferential standard of review. But that review is applied against a backdrop of administrative-law principles that require the ALJ to provide an explanation that is internally consistent and that fairly evaluates the competing items of evidence in an even-handed way. *See Garrison*, 759 F.3d at 1017 n.23 (an ALJ is "not permitted to 'cherry-pick' from . . . mixed results to support a denial of benefits" (citation omitted)); *Gallant*, 753 F.2d at 1456 (an ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result"). The ALJ failed to do that here. The substantial deference we are to afford does not require us to rubberstamp the sort of highly selective and uneven consideration of the opinion evidence reflected in the decision in this case. I respectfully dissent.