**Haroutinoun GHOKASSIAN, Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant–Appellee.**

**No. 93–55188.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 1994.

Decided Dec. 2, 1994.

---

Stephanie M. Simpson, Northridge, CA, for plaintiff-appellant.

Kaladharan M.G. Nayar, Asst. Regional Counsel, Dept. of Health and Human Services, for defendant-appellee.

Before: POOLE and REINHARDT, Circuit Judges, TANNER,* District Judge.

REINHARDT, Circuit Judge:

## I. *BACKGROUND*

Haroutinoun Ghokassian (Ghokassian) is a Lebanese who immigrated to the United States in his early thirties. Between 1976 and 1987, he worked here as a sewing machine operator. However, his physical and mental condition gradually deteriorated until, in June of 1987, he was no longer able to work a full day and thus could not remain at his job. Ghokassian's application for social security benefits was denied. After exhausting his administrative remedies, he brought an action in the district court under 42 U.S.C. §§ 405(g) & 1383(c)(3), which provide for judicial review of the final decisions of the Secretary of Health and Human Services (Secretary).

The Social Security Act provides that, in order to qualify for benefits, an applicant

---

* The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation.

must establish an "inability to engage in any *substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) & 1382(a)(3)(A) (emphasis added).

Three doctors submitted reports that, due to Ghokassian's mental and emotional condition, he was ·incapable of engaging in substantial gainful activity. All three doctors were well-qualified. Each doctor, with the help of an interpreter to ensure the accuracy of his diagnosis, based his conclusion upon a direct examination of Ghokassian. In reaching a contrary conclusion, the Secretary relied upon the qualified suggestion of a first-year resident psychiatrist that Ghokassian was "malingering," and the subsequent opinion of a consultative psychologist that was based principally upon that qualified suggestion. The first-year resident had received a medical degree from the Philippines but, at the time· of the hearing, was not listed as possessing· any medical license. Moreover, although Ghokassian spoke extremely poor English, the first-year resident did not use an interpreter when obtaining from him the information that formed the basis for the resident's qualified opinion. The consultative psychologist who subsequently "confirmed" that qualified opinion did not himself examine Ghokassian but relied instead upon the first-year resident's report. Nevertheless, the district court granted summary judgment, finding that substantial evidence supported the findings of the Secretary. Ghokassian timely appeals to this court.

## II. ANALYSIS

We review the district court's decision *de novo*. The question before us is whether substantial evidence supports the Secretary's decision to deny benefits. *Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir.1985). In determining that question, we have repeatedly held that "we review the administrative record as a whole, *weighing both the evidence that supports and [that which] detracts from the ALJ's conclusion.*" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.1989) (emphasis added) (internal quotations omitted).

### A. *Review of the Evidence from the Record as a Whole*

■ A review of the record makes clear that substantial evidence does not support the finding of the Secretary. To the contrary, substantial evidence compels the opposite conclusion. In making a finding of malingering and discounting extensive evidence provided by doctors whose qualifications and experience were not disputed by either party, the Secretary relied on the views of two people: Dr. Isidro and Dr. Walter. Dr. Isidro is a first-year resident who was trained in the Philippines and who apparently did not possess a medical license, at least as of the time of the hearing. More important, he did not use an interpreter in making his evaluation; despite the fact that. Ghokassian spoke English so poorly that *every other doctor* who examined him utilized an interpreter and despite the fact that the administrative hearing was conducted with the assistance of an interpreter. Dr. Walter is a clinical psychologist who never directly examined, or administered any tests to, Ghokassian. Although the record reviewed by Dr. Walter revealed that the three doctors who had made clear that Ghokassian was incapable of engaging in ·substantial gainful activity had used an interpreter in order to obtain the necessary information from him and that the first-year resident who advanced the qualified hypothesis that Ghokassian was malingering had not, Dr. Walter chose to assume that Dr. Isidro's report was accurate and accordingly endorsed the view expressed in the first-year resident's report. The Secretary's evidence is insubstantial at best.

In contrast, the evidence supporting Ghokassian's claim, and contradicting the Secretary's finding, is clearly substantial. Unlike Dr. Isidro and Dr. Walter, all three doctors who *directly* examined Ghokassian with the assistance of an interpreter before reaching their medical conclusions found that his physical and psychiatric condition was such that he could not engage in substantial gainful activity. Two of those doctors possessed medical degrees and significant experience in the field; the other doctor, a clinical psychologist like Dr. Walter, performed objective

tests on Ghokassian to ensure the accuracy of his diagnosis, unlike Doctor Walter, who merely read some reports about him.

Thus, when one examines the record *as a whole,* it is clear that the Secretary lacked substantial evidence to support her findings. The three highly qualified doctors who concluded that Ghokassian was not capable of engaging in substantial gainful activity did so based upon direct contact, trustworthy examinations, and objective tests. In contrast, the evidence supporting the Secretary's finding that Ghokassian was malingering consisted solely of the qualified conclusion of a first-year resident who did not utilize an interpreter in obtaining the information upon which his diagnosis was based, and the subsequent "confirmation" of that tainted diagnosis by a psychologist who never had any contact with Ghokassian and relied principally upon the report of the first-year resident.

The Secretary's (and the ALJ's) claim that there was significant conflict among the doctors concerning Ghokassian's ability to communicate, his education, his memory, and his thoughts about suicide is without merit. The doctors whose reports supported Ghokassian's claim were in substantial agreement. They concurred that Ghokassian had only a fourth grade education and that he encountered significant difficulties in speaking English and in remembering past events.[1] The only "conflict" in the record arose from Dr. Isidro's report. Dr. Isidro, the only doctor not to have used an interpreter in examining Ghokassian, concluded from his discussion with the claimant that he had a twelfth grade education and was an adequate historian of events, despite the doctor's admission that Ghokassian spoke only broken English. It is apparent that, in this respect at least, Dr. Isidro was mistaken.[2] Because Dr. Isidro did not use an interpreter and did not communicate effectively with Ghokassian, we find that the ALJ erred in disregarding the findings of the three other doctors and basing his

decision directly and indirectly upon Dr. Isidro's qualified conclusions.

### B. *Treating Physician*

■ In addition to concluding that the Secretary's determinations were not supported by substantial evidence, we also hold that the ALJ committed a *legal* error when he failed to grant deference to the conclusions of Dr. Sweel, Ghokassian's treating physician. This court has consistently afforded the opinion of the treating physician substantial weight and advised the Secretary that she must do so as well. *Curry v. Sullivan,* 925 F.2d 1127, 1129 (9th Cir.1990). Indeed, we have recognized that the ALJ may disregard the conclusions of the treating physician *"only if* the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir.1985).

Dr. Sweel is without doubt Ghokassian's treating physician. He saw Ghokassian twice within a 14–month period preceding the hearing and, significantly, Ghokassian saw no other physicians during that period. More important, Ghokassian requested that Dr. Sweel treat him, and Dr. Sweel prescribed drugs for Ghokassian. Ghokassian subsequently listed Dr. Sweel as his treating physician, and Dr. Sweel referred to Ghokassian as "my patient." Dr. Sweel is also the doctor with the most extensive contact with Ghokassian. We have accorded deference to treating physicians precisely because they are the doctors with "greater opportunity to observe and know the patient." *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1993) (internal quotation omitted). Dr. Sweel's conclusions concerning Ghokassian was clear; he reported on two separate occasions that Ghokassian was "not capable of engaging in substantial gainful activity."

The only justifications the ALJ provided for discounting the evidence of Dr. Sweel

---

**1.** The ALJ raised only one issue upon which the doctors supporting Ghokassian's claim disagreed—whether Ghokassian had spoken of suicide to them during the examination. That he mentioned the possibility to one but not all of his doctors does not justify doubts as to his credibility.

**2.** The record does not tell us, incidentally, how well or poorly Dr. Isidro spoke English, and thus we do not consider that fact here.

were that he saw Ghokassian for the first time in June of 1987, a little more than a year before the hearing—a point we have already discussed—and that he did not identify by name the interpreter who accompanied Ghokassian to his examinations. In doing so, the ALJ committed clear legal error.

There is absolutely no requirement for a treating physician to list the name of an interpreter when submitting his report, nor can we perceive any need for such a requirement. An adverse finding based on a failure to so identify the interpreter does not represent a "specific, legitimate reason[ ] for [the decision] . . . based on substantial evidence in the record." *Miller*, 770 F.2d at 849. We note that the ALJ's error is especially glaring in light of the fact that he based most of his own conclusions upon the report of a first-year resident who did not even use an interpreter in making his diagnosis and only examined Ghokassian *once*. To accept the resident's conclusions and to reject the report of the claimant's treating physician because the latter failed to record the name of the interpreter in his report strikes us as remarkable. The ALJ's reasons simply do not justify discounting the findings of Ghokassian's treating physician.[3] Instead, they clearly reveal the insubstantial foundation upon which the Secretary's decision rests.

## C. *Remedy*

■ We have repeatedly held that we have discretion to award benefits to a claimant whenever there is no need to remand the case for additional factual findings. *See Varney v. Secretary of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th Cir.1988); *Gallant v. Heckler*, 753 F.2d 1450, 1457 (9th Cir.1984). As we noted in *Varney*, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." *Varney*, 859 F.2d at 1399 (citations omitted). In adopting such a rule, we have recognized

the importance of expediting disability claims. *Id.* at 1401.

We find three cases to be especially relevant to our decision. In *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1988), we found that substantial evidence did not support the Secretary's findings because the ALJ did not provide specific reasons for disbelieving the treating physician. Rather than remanding for further proceedings, we accepted the treating physician's opinion and ordered the payment of benefits. *Id.* In *Sprague v. Bowen*, 812 F.2d 1226, 1230–32 (9th Cir. 1987), we awarded benefits because no legitimate reasons were given for disregarding the physician's opinion and the Secretary's decision was not supported by substantial evidence. Similarly, in *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990), we awarded benefits when the Secretary did not provide legitimate reasons for disregarding the opinion of the treating physician and when there was "no legitimate conflicting testimony."

■ In this case, the ALJ improperly discounted the opinion of the treating physician. Moreover, the ALJ's reliance upon the findings of a first-year resident who did not use an interpreter in examining Ghokassian was erroneous and reveals that the Secretary's decision was not supported by substantial evidence. Ghokassian's treating physician, as well as two other examining doctors, clearly reported that Ghokassian was unable to engage in substantial gainful activity. Their conclusions were not contradicted by any legitimate evidence. Accordingly, we follow the rule established in *Winans*, *Sprague*, and *Pitzer* and award Ghokassian the benefits he seeks.

## III. *CONCLUSION*

A review of the record as a whole indicates that the Secretary's finding was not supported by substantial evidence. We hold that the ALJ erred in giving significant weight to the tentative conclusions of a first-year resident who did not use an interpreter

---

3. Because we find that the ALJ erred in discounting the conclusions of a treating physician, we need not reach the question of whether it was improper for the ALJ to rely upon purported personal knowledge about the interpreter who accompanied Ghokassian to the hearing or whether the ALJ's reliance on his unconfirmed suspicions regarding that individual represented an act of bias that tainted his decision.

in examining Ghokassian, while discounting the conclusions of Ghokassian's treating physician and the other doctors who did. Because we find it unnecessary to remand for further administrative proceedings, we reverse the district court's decision and remand so that the benefits Ghokassian seeks may be awarded. The district court shall remand this case to the Secretary with the appropriate instructions to ensure that Ghokassian's request for benefits is granted.

REVERSED AND REMANDED.

Poole, Circuit Judge, dissenting:

The sole issue in this case is whether the Secretary's decision to deny benefits to Ghokassian was supported by substantial evidence, not to determine the credibility of the medical testimony. Because I conclude that the Secretary presented substantial evidence, I respectfully dissent.

As indicated, our role on review is limited to determining whether the Secretary's decision is supported by substantial evidence. *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984). As the majority correctly notes, "we review the administrative record as a whole, weighing both the evidence that supports and [that which] detracts from the ALJ's conclusion." *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989) (internal quotations omitted). The ALJ may reject either an expert's report or a treating physician's opinion so long as he provides clear and convincing reasons for doing so. *Id.* at 751 (treating physician); *Coats v. Heckler,* 733 F.2d 1338, 1340 (9th Cir.1984) (expert report). The reports of consultative physicians may constitute substantial evidence. *Magallanes,* 881 F.2d at 752.

"Where medical testimony is conflicting, however, it is the ALJ's role to determine credibility and to resolve the conflict. If the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ." *Allen,* 749 F.2d at 579 (citation omitted). We should refrain from second-guessing the ALJ's determinations regarding the credibility of medical testimony. *Id.* at 580. The ALJ may disregard a claimant's self-serving statements if they are unsup-

ported by objective findings. *Coats,* 733 F.2d at 1340.

Second-guessing the ALJ's credibility determinations is exactly what the majority does to achieve its result. While three doctors submitted reports stating that Ghokassian was incapable of engaging in substantial and gainful activity due to his mental and emotional condition, Dr. Isidro, a consultative psychiatrist, opined that Ghokassian was possibly "malingering," and might improve with appropriate treatment.

Dr. Walter, a clinical psychologist, who reviewed Ghokassian's medical records and observed him at the disability hearing, cited numerous inconsistencies in the records regarding Ghokassian's ability to communicate, his memory, his education, and any suicidal thoughts. Furthermore, the ALJ noted that, in Ghokassian's prior application for benefits the previous year (which was denied and never appealed), he neither alleged a mental impairment nor did the medical records disclose such an impairment. At the prior disability hearing (before the same ALJ), Ghokassian showed no signs of discomfort or distress; he was merely overweight.

The ALJ also noted that the three doctors who examined Ghokassian in the summer of 1987 recommended treatment for his alleged mental impairment. Ghokassian did not seek the recommended treatment. Dr. Isidro, however, examined Ghokassian in December 1987 and found no severe mental impairment. Finally, the ALJ found that Ghokassian's testimony regarding his alleged psychiatric impairment at the hearing was exaggerated, self-serving, and unsupported by the record.

The ALJ concluded that, even if any of the three doctors who found severe mental impairments were characterized as a "treating physician," their opinions were contradicted by Drs. Isidro and Walter, and the medical records submitted in support of Ghokassian's prior disability application.

The majority attempts to undercut the ALJ's specific, legitimate reasons by repeatedly referring to Dr. Isidro's opinion as the "qualified suggestion of a first-year resident psychiatrist" versus the well-qualified opinions of the three doctors who found a

**1306**

mental impairment. The majority also raises considerable ado because the three doctors used an interpreter to obtain information from Ghokassian, and Dr. Isidro did not.

Without question, the ALJ was familiar with the qualifications of all the doctors and decided that Dr. Isidro's opinion was entitled to more weight. Dr. Isidro indicated that Ghokassian was able to communicate with him in broken English. Because the ALJ provided specific and legitimate reasons for favoring the testimony of Dr. Isidro over the treating physicians, we should not second-guess his credibility determinations by impermissibly scrutinizing the qualifications of each doctor. *See Magallanes,* 881 F.2d at 752–53; *Allen,* 749 F.2d at 580.

I would conclude that the Secretary provided substantial evidence for denying benefits to Ghokassian.