Bernard T. RHOADES, Plaintiff—Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security Administration Defendant—Appellee.

No. 02–55617.

DC No. CV 00–0748 MC.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 2003.

Decided April 29, 2003.

Before PREGERSON, TASHIMA, and CLIFTON, Circuit Judges.

MEMORANDUM*

Bernard Rhoades appeals the district court's affirmance of the denial of his application for Social Security disability benefits. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

On April 21, 1999, Rhoades applied for Social Security disability benefits. Rhoades has hypertension and a seizure disorder, which resulted in four blackouts between 1996 and 1999. A July 28, 1999, report by Dr. David Bedrin diagnosed Rhoades with a depressive disorder, not otherwise specified. As a result of this depressive disorder, Dr. Bedrin found that Rhoades had a functional limitation: while he could understand simple one- and two-step job instructions, he had difficulty understanding, remembering, and carrying out complex job instructions. In an August 11, 1999, report, Dr. D.H. Grant diagnosed Rhoades with post-traumatic stress disorder (PTSD) and later found that Rhoades was unable to work because of his mental and psychiatric condition.

After a hearing, the Administrative Law Judge (ALJ) denied benefits for Rhoades. Although the ALJ found that Rhoades had a severe seizure disorder and a non-severe depressive disorder that prevented him from working as a truck driver, the ALJ found that Rhoades could perform the jobs of hand packager or grocery bagger based on the testimony of a Vocational Expert (VE). In reaching this decision, the ALJ rejected Rhoades' subjective symptom testimony and credited Dr. Bedrin's opinion over Dr. Grant's opinion. The district court affirmed the ALJ's decision.

We review de novo a district court order affirming the ALJ's decision to deny benefits. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.2002). The ALJ's decision to deny benefits must be set aside when it is based on legal error or not supported by substantial evidence in the record as a whole. *Bustamonte v. Massanari*, 262 F.3d 949, 953 (9th Cir.2001).

Rhoades argues that the ALJ improperly determined that he could perform the jobs of hand packager or grocery bagger because the ALJ ignored Rhoades' functional limitation in determining his residual functional capacity (RFC) and failed to include his functional limitation in her hypothetical to the VE. We agree on both counts. In determining a claimant's RFC, the ALJ must consider the limiting effects of all of the claimant's impairments, even those that were not severe. 20 C.F.R.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

§ 404.1545(e); SSR 96–8p at 5. The ALJ's decision, however, did not consider how the functional limitation caused by Rhoades' non-severe depressive disorder (*i.e.*, his difficulty understanding complex instructions) affected his RFC. *See* 20 C.F.R. § 404.1545(c). The ALJ's failure to consider Rhoades' functional limitation in determining his RFC apparently led to the ALJ's failure to include his functional limitation in her hypothetical to the VE.

For a hypothetical to be reliable and have evidentiary value, it must include all of a claimant's limitations. *Thomas,* 278 F.3d at 956; *Matthews v. Shalala,* 10 F.3d 678, 681 (9th Cir.1993). The ALJ, however, did not include Rhoades' difficulty understanding complex instructions in her hypothetical to the VE. Furthermore, the ALJ did not direct the VE to credit any prior testimony on this functional limitation, nor did the ALJ point the VE to any evidence on it. *Cf. Thomas,* 278 F.3d at 956 ("[T]he ALJ directed the VE to credit fully a specific portion of the record, which the VE had just heard. As a result, the ALJ's hypothetical adequately incorporated Ms. Thomas' limitation.").

In response to the hypothetical, the VE testified that Rhoades could perform the jobs of hand packager or grocery bagger. Both jobs require a Dictionary of Occupational Titles (DOT) reasoning level of 2, which means that a worker has to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral in-

structions." DOT, App. C. Since the VE never considered Rhoades' functional limitation in his testimony, it is not clear whether his difficulty understanding complex instructions would prevent him from comprehending the "detailed but uninvolved" instructions required for those jobs.

In addition, the VE's testimony did not take into consideration Rhoades' severe seizure disorder. The VE testified that Rhoades could perform the jobs of hand packager and grocery bagger in response to the question "Mr. Hartley, what medium jobs could such a person perform?" Prior to this question, the ALJ did not mention Rhoades' blackouts or his seizure disorder. The ALJ also did not refer the VE to any testimony or evidence on the seizure disorder before the VE's testimony. *Cf. Thomas,* 278 F.3d at 956. Even though the VE was present during prior testimony on Rhoades' seizure disorder, we cannot assume that the VE considered that testimony in his response to the ALJ's hypothetical. *Andrews v. Shalala,* 53 F.3d 1035, 1044 (9th Cir.1995). Only after the VE testified that Rhoades could perform the work of a hand packager or grocery bagger did the ALJ mention his seizure disorder; to this question, the VE responded that Rhoades could not sustain employment.[1] The ALJ's failure to mention the seizure disorder when eliciting job information from the VE, as well as the VE's response that Rhoades could not sus-

---

1. When the ALJ finally mentioned Rhoades' seizure disorder, she referred both to his girlfriend's assertion that he blacked out two or three times a week (which is not supported by the record) and the frequency of Rhoades' blackouts as detailed by the medical reports in the record. It is not apparent on which of those blackout frequencies the VE based his testimony that Rhoades could not sustain employment. If the VE based his testimony on the blackout frequency described in the medical reports, then the ALJ clearly erred in finding that Rhoades could work in the national economy. If the VE based his testimony on the blackout frequency as reported by Rhoades' girlfriend, then the hypothetical included an assertion with no factual basis in the record. If the VE based his testimony on both of these blackout frequencies, then the ALJ should have further inquired as to whether Rhoades could sustain employment based solely on the blackout frequencies described in the medical reports.

tain employment when the ALJ actually mentioned the seizure disorder, preclude the VE testimony from constituting substantial evidence for the ALJ's conclusion that Rhoades could perform other jobs in the economy. We remand for a determination of Rhoades' vocational ability based upon a hypothetical that adequately reflects his severe seizure disorder and functional limitation due to his depressive disorder. *Andrews,* 53 F.3d at 1044.

Rhoades argues that the ALJ erred in rejecting Dr. Grant's opinion diagnosing PTSD. Before rejecting Dr. Grant's opinion, the ALJ did not determine whether Dr. Grant was Rhoades' treating psychiatrist. A treating psychiatrist has an ongoing relationship with a patient, defined as "a frequency consistent with accepted medical practice for the type of treatment" required for a medical condition. 20 C.F.R. § 404.1502. In *Ghokassian v. Shalala,* 41 F.3d 1300, 1303 (9th Cir.1994), we held that a physician who saw a patient twice for mental and emotional problems within a 14–month period before the ALJ hearing was a treating physician due to the nature of their relationship. Dr. Grant examined Rhoades before the ALJ hearing on August 11, 1999 and after the hearing (but before the ALJ's decision) on December 21, 1999. The record shows that, like in *Ghokassian,* Rhoades did not see another psychiatrist between these visits and appears to have received medication from Dr. Grant. Also, Rhoades was scheduled for a return visit two months after his last visit. On remand, the ALJ should determine whether Dr. Grant was the treating physician. If Dr. Grant was the treating psychiatrist, then the ALJ must give his opinion more weight or articulate "specific and legitimate reasons" for rejecting his opinion. *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir.1998).

Rhoades also argues that the ALJ erred by finding that his mental impairments were not severe. In her decision, the ALJ made the conclusory finding that "the medical record does not substantiate his depression to be more than severe." The ALJ did not apply the 20 C.F.R. § 404.1521(a) severity test to Rhoades' depressive disorder, which impaired his ability to understand complex job instructions. Section 404.1521(a) states that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). This severity inquiry is "a de minimis screening device to dispose of groundless claims." *Edlund v. Massanari,* 253 F.3d 1152, 1158 (9th Cir.2001).

On remand, the ALJ should apply the severity test of 20 C.F.R. § 404.1521(a) to Rhoades' depressive disorder, including his functional limitation. Morever, if the ALJ credits Dr. Grant's opinion on remand, the ALJ must include the PTSD diagnosis in the severity determination. *See Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir.1996) ("[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe.").

Finally, Rhoades argues that the ALJ erred by rejecting Rhoades' subjective symptom testimony as not credible. We agree that some of the ALJ's reasons for rejecting this testimony are not very probative of the validity of Rhoades' symptoms. For example, the ALJ notes that Rhoades testified that he was a "tunnel rat" in Vietnam, but told Dr. Grant that he was in the signal corps. Rhoades served two tours of duty in Vietnam, however, so he could very well have performed both jobs. The ALJ also mentioned that Rhoades' girlfriend told a Social Security Administration employee that he had a metal plate in his head, which Rhoades

denied at the hearing. While this inconsistency might evidence some lack of credibility, it is not very probative of the validity of Rhoades' symptoms. On remand, the ALJ may reject Rhoades' subjective symptom testimony only by making "specific findings stating clear and convincing reasons for doing so." *Id.* at 1283–84 (9th Cir.1996); *see also* SSR 96–8 (guidelines for credibility determinations). If the ALJ finds Rhoades' testimony to be credible on remand, it must be considered in determining his RFC. *See* SSR 96–8p, at 7.

The judgment of the district court is reversed and the case remanded with directions to further remand to the Commissioner for further proceedings consistent with this disposition.

**REVERSED and REMANDED.**

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.