UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Beth Ann Grenier

   v.

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration

Case No. 16-cv-210-JL
Opinion No. 2017 DNH 163

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Beth Grenier moves to reverse the Acting Commissioner's decision to deny her applications for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, the Acting Commissioner's decision, as announced by the Administrative Law Judge ("ALJ") is reversed, and the Acting Commissioner is directed to approve Grenier's applications for DIB and SSI.

## I. Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions).  However, the court "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402

2

U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts.  That statement, document no. 10, is part of the court's record and will be summarized here, rather than repeated in full.

On three occasions, Grenier has been found eligible for state-supported mental-health services by New Hampshire's Medicaid program.  As a result, she has received treatment for

3

depression, posttraumatic stress disorder ("PTSD"), panic disorder, and borderline personality disorder. Each time that Grenier was determined eligible for mental-health services, the determination was supported by a form ("DOE form") that was prepared by a social worker who provided her with mental-health treatment and was co-signed by a treating psychiatrist. In each of her DOE forms, Grenier was assessed to have moderate limitations in each of four functional abilities: (1) activities of daily living; (2) interpersonal functioning; (3) adaptation to change; and (4) concentration, task performance, and pace. See Administrative Transcript (hereinafter "Tr.") 306-06 (October 18, 2011), 513-14 (July 19, 2012), 943 (July 6, 2014). According to the rating system employed by the Medicaid program, a person with "moderate limitations" requires help, assistance, intervention, and/or prompting to perform adequately in each of the four functional areas addressed by the form. See Tr. 516-19.

In January of 2013, Grenier was awarded Aid to the Permanently and Totally Disabled by the New Hampshire Medicaid program, based upon her mental impairments (PTSD, depression, and panic attacks). That award was supported by a Psychiatric Evaluation prepared by Dr. Michael Schneider which also employed the Medicaid rating system. Dr. Schneider opined that Grenier had moderate limitations in two of the four listed abilities and

had marked limitations in the other two.  <u>See</u> Tr. 343

In July of 2012, Grenier applied for DIB and SSI, claiming that she was unable to work as a result of depression, PTSD, and suicidal thoughts.  After her claim was denied at the initial level, Grenier received a hearing before an ALJ, who determined that she was not eligible for benefits.  In his decision, the ALJ gave substantial weight to an assessment of Grenier's mental residual functional capacity ("RFC")[1] by Dr. William Jamieson, a non-examining state-agency consultant who reviewed Grenier's medical records.  After spelling out his specific opinions on Grenier's mental RFC, Dr. Jamieson offered the following additional explanation for his RFC assessment:

> Weight given to [medical evidence of record] on file, with increased weight to recent psych [consultative examination by Dr. Richard Root].  Claimant does have some limitations due to anxiety related [symptoms].  . . .
>
> Despite [symptoms], in a simple job[] setting, with few social demands and reasonably supportive supervision, claimant is able to maintain persistence to task within acceptable tolerances, and to maintain schedules and attendance without unreasonable interruption.  She does have limitations in stress tolerance, and is able to deal with only simple and routine changes in the work setting.

Tr. 86, 97.

---

[1] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1519 & 416.919.

5

While the ALJ gave substantial weight to Dr. Jamieson's opinion, he effectively ignored the medical evidence from Dr. Root to which Dr. Jamieson referred in his RFC assessment. That medical evidence consists a Psychological Evaluation that Dr. Root wrote after giving Grenier a consultative examination.[2] In that evaluation, Dr. Root diagnosed Grenier with: chronic PTSD; panic attacks with agoraphobia; alcohol dependence; depressive disorder not otherwise specified; nicotine dependence; rule out eating disorder;[3] rule out pain disorder with psychological and medical factors; cocaine abuse in self-reported full remission; and personality disorder traits of a depressed, narcissistic, paranoid type. Based his examination, Dr. Root gave the following opinions on Grenier's then-current level of functioning:

> ACTIVITIES OF DAILY LIVING:  . . . Ms. Grenier would be able to handle her personal hygiene, cook, pay bills and maintain her residence adequately. She will have more difficulty with shopping, secondary to her panic attacks. She likely could shop adequately with a friend going with her.

---

[2] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

[3] "'Rule-out' in a medical record means that the disorder is suspected but not confirmed — i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out." Byes v. Astrue, 687 F.3d 913, 916 n.3 (8th Cir. 2012) (citing United States v. Grape, 549 F.3d 591, 593 n.2 (3d Cir. 2008)).

SOCIAL FUNCTIONING:  . . . Ms. Grenier is capable of social functioning within a structured, supportive setting, such as a one-on-one interview, as we completed or within a work setting where tasks are very clear and there is not significant emotional intensity, confusion or demands.  In settings that are more emotionally charged, demanding or more inconsistent, she will have significant problems functioning.

UNDERSTANDING AND MEMORY:  . . . [W]ithin a one-on-one supportive structured setting, Ms. Grenier has adequate skills and capabilities to understand and remember short and simple, as well as slightly complex [instructions], still has more difficulty with situations where the instructions are more complicated or there is more stress present.

CONCENTRATION AND TASK COMPLETION:  . . . [W]ithin a structured supportive one-on-one setting, Ms. Grenie[r] is able to concentrate and compete tasks adequately.  In tasks that are more demanding and emotionally, stressfully charged, she will have difficulties.  Her capability of concentrating on tasks and completing tasks, likely would vary, based on her self-reports.  When she is having panic attacks, she will have significantly more difficulty.

REACTION TO STRESS AND ADAPATION TO WORK-LIKE SITUATIONS:  . . . Ms. Grenier is able to maintain attendance in a schedule and is able to interact appropriately with supportive supervisors.  In a highly competitive, structured or fast paced stressful environment, she likely will have more difficulty with interacting appropriately with supervisors.

Tr. 338-39 (emphasis added).

At Grenier's hearing, the ALJ posed questions to a vocational expert ("VE") that assumed a hypothetical worker with Grenier's education and work experience, and who

> could do simple jobs with few social demands, and persist with[in] acceptable tolerances, maintain schedules and attendances without unreasonable

7

interruption, and can deal with only simple and
routine changes in a work setting.

Tr. 69.  According to the VE, a person with those limitations could not do Grenier's past work as a private cook, but could perform three other jobs.  Later in the hearing, claimant's counsel asked the VE what jobs would be available to someone with Grenier's education and work experience who had to work "in a one-on-one structured and supportive setting."  Tr. 72.  The VE testified that such a person would be virtually unemployable.

Ultimately, the ALJ found that Grenier could perform the three jobs identified by the VE and, as a result, he determined that she was not disabled.  Grenier appealed the ALJ's decision to this court.  On appeal, Judge Barbadoro ruled that "[t]he ALJ erred by failing to address Dr. Root's opinion regarding a one-on-one work setting limitation."  Grenier v. Colvin, No. 14-cv-153-PB, 2015 WL 5095899, at *4 (D.N.H. July 2, 2015).  Based on that ruling, Judge Barbadoro remanded the matter.

On remand, the ALJ conducted a second hearing.  Before the hearing, Grenier submitted two new pieces of evidence, the July 2014 DOE form and a January 2016 mental RFC assessment by Dr. Gwendolyn Barros, a treating psychiatrist who also co-signed both the 2011 and 2014 DOE forms.

In her mental RFC assessment, Dr. Barros gave 20 specific opinions covering four broad functional abilities: understanding

8

and memory, sustained concentration and persistence, social interaction, and adaptation.  Among other things, Dr. Barros opined that Grenier was markedly limited in her ability to: (1) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (2) interact appropriately with the general public; (3) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and (4) maintain socially appropriate behavior.  According to the SSA's rating system, "markedly limited" is defined as a "[s]ubstantial loss of ability [as a result of which a person] can sustain performance only up to 1/3 of an 8-hour workday."  Tr. 992.

At Grenier's second hearing, in 2016, her counsel elicited testimony from the VE that a person who was off task for more than 10 percent of the workday would be precluded from employment.  The VE also testified that all jobs would be precluded for a person who "could only sustain performance for up to one-third of the work day in the ability to interact appropriately with the general public, and also could only sustain performance for up to one-third of the work day in the ability to get along with coworkers."  Tr. 602.

After the 2016 hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions

9

of law:

> 2.  The claimant has not engaged in substantial gainful activity since January 20, 2013, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> . . . .
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can do simple jobs with few social demands, persist at tasks within reasonable tolerances, maintain schedules and attendance without unreasonable interruption, and deal with simple and routine changes in the work setting.
>
> . . . .
>
> 10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 562, 566, 572.  As he had in his previous decision, the ALJ found that Grenier was able to perform the three jobs identified by the VE and, consequently, he determined that she was not disabled.

The ALJ's RFC includes no limitation to working in a structured supportive one-on-one setting.  In explaining the basis for his RFC, the ALJ stated that he gave substantial weight to the opinions in Dr. Jamieson's RFC assessment and gave little weight to the opinions in: (1) Dr. Root's Psychological Evaluation; (2) the 2014 DOE form, which was completed by Alissa

Gallo and Dr. Barros; (3) Dr. Barros's RFC assessment; and (4) Dr. Schneider's Psychological Evaluation.

### III. Discussion

#### A.    The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The question in this case is whether the ALJ correctly determined that Grenier was not under a disability from January 20, 2013, thorough February 26, 2016.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional

11

capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  Finally,

[i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B.    **Grenier's Claims**

Grenier claims that the ALJ erred in determining her RFC by mishandling the medical opinion evidence in at least three ways: (1) basing his evaluation of the opinions in Dr. Barros's 2016 RFC assessment on a misapprehension of the differences between the rating systems used by the state Medicaid program and the

SSA;[4] (2) basing his evaluation of Dr. Root's opinion on several factual inaccuracies; and (3) giving substantial weight to Dr. Jamieson's opinion, which is not consistent with the record as a whole. She also claims that the ALJ erred at step 5, by relying upon VE testimony that was elicited in response to a hypothetical question that incorporated the flawed RFC he assigned her. The manner in which the ALJ handled Dr. Root's opinion merits the unusual remedy of reversal along with instructions to the Acting Commissioner to approve Grenier's applications for benefits.

Judge Barbadoro remanded this matter because in the ALJ's first decision, he "fail[ed] to address Dr. Root's opinion regarding a one-on-one work setting limitation." Grenier, 2015 WL 5095899, at *4. In his second decision, the ALJ did address Dr. Root's opinion and found it "unpersuasive and unsupported by the record." Tr. 570. He elaborated:

> The opinion is not supported by any narrative within Dr. Root's report. [Grenier] told Dr. Root that she could work if she had medical benefits for mental health treatment. It is not supported by the claimant's work history as cook and self-employed jewelry maker [not support limitation to unskilled work]. Dr. Root noted that the claimant currently was working at a market/store 30 hours per week, and was using a computer. No prior work was in a 1-on-1 supportive work station. The claimant plays guitar and writes music [not support limitation to unskilled

---

[4] Indeed, the state Medicaid program uses the term "moderate" to denote a more profound functional deficit than is denoted by that same term in the SSI rating system.

> work] and spends fair amount of time on the Internet, writing music on computer 2.5-3 hours per day. In November 2014, she reported that she was going to work at Applebee's, not a 1-on-1 supportive work station. She reported a strength of "good at helping other people."

Id. (citations to the record omitted, brackets in the original).

In her motion to affirm the ALJ's decision, respondent points out that because Dr. Root was "not a 'treating source,'" his opinion was "not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons," Smythe v. Astrue, No. 2:10-cv-521-GZS, 2011 WL 2580650, at *5 (D. Me. June 28, 2011) (citing 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2)), R. & R. adopted by 2011 WL 2942733 (July 21, 2011). Still, the inapplicability of the treating source rule to the opinion of an examining source cannot be a license for an ALJ to give reasons for discounting such opinions that are not supported by substantial evidence. For example, in Ryder v. Colvin, in which Magistrate Judge Rich cited Smythe, he rejected the claimant's argument that an ALJ had rejected the opinion of a consultative examiner "out of hand," but only after determining that the ALJ's reasons for discounting the examiner's opinions were supported by the record, see No. 1:15-cv-00509-GZS, 2016 WL 7048690, at *4 (D. Me. Dec. 5, 2016), R. & R. adopted by 2017 WL 79943 (Jan. 9, 2017). Here, by contrast, the ALJ's reasons for discounting Dr.

14

Root's opinion are unsupported by the record.

The ALJ said that Dr. Root's opinion was "not supported by any narrative within Dr. Root's report." Tr. 570. But Dr. Root did not present his opinions by means of a check-box form that required further discussion; he presented his opinions in a narrative format.

The ALJ said that Grenier "told Dr. Root that she could work if she had medical benefits for mental health treatment." Tr. 570. What Grenier actually said was that "she would not be able to work without [mental-health] services." Tr. 334. Moreover, the record shows that in January of 2013, about a month after she saw Dr. Root, and while she was receiving mental-health services, Grenier quit her job at a market because she "was so stressed out, having major panic attacks." Tr. 54. In other words, even with mental-health services, Grenier felt that she was unable to work. Thus, the statement to which the ALJ refers does not contradict Dr. Root's opinion that Grenier requires a structured supportive one-on-one work setting.

The ALJ said that "Dr. Root noted that the claimant currently was working at a market/store 30 hours per week, and was using a computer." Tr. 570. But Dr. Root also noted "that the market accommodate[d] her panic attacks," Tr. 334, which supports, rather than contradicts, his opinion that Grenier required a structured supportive one-on-one work setting. And

15

while the record supports the ALJ's finding that Grenier "was using a computer," Tr. 570, the ALJ does not explain how Grenier's ability to use a computer contradicts Dr. Root's opinion.

The ALJ said that "[n]o prior work was in a 1-on-1 supportive work station." Tr. 570. But, as the court has noted, Grenier's market job included accommodations for her panic attacks. Moreover, her job as a cook was one in which she "did all the cooking, grocery shopping and cleaning for a private home," Tr. 212, and her jewelry-making job involved "making bracelets when [she] was in the truck with [her] husband," Tr. 51. Thus, at least three of Grenier's previous jobs involved either support or work that was performed with very few other people around. Moreover, even if the record did support the ALJ's finding that none of Grenier's prior work was performed in a one-on-one setting, that would not contradict Dr. Root's opinion, in light of the record evidence that Grenier felt compelled to leave a number of previous jobs because of stress associated with working in a job setting in which she was obligated to interact with other people.

The ALJ said that "[t]he claimant . . . spends [a] fair amount of time on the Internet, writing music on [a] computer 2.5-3 hours per day." Tr. 570. Leaving aside the ALJ's failure to explain how music-writing and Internet usage contradict Dr.

16

Root's opinion, Grenier testified at her second hearing that she went on the Internet "[m]aybe once a week," Tr. 600. Thus, the ALJ's finding that Grenier spent several hours a day on the Internet is not supported by substantial evidence.

The ALJ said that "[i]n November 2014, [Grenier] reported that she was going to work at Applebee's, not a 1-on-1 supportive work station." Tr. 570. That may be, but earlier in his decision, the ALJ found that Grenier had "not engaged in substantial gainful activity since January 20, 2013," Tr. 562, so her stated intention to get a job at Applebee's, which came to nothing, does not contradict Dr. Root's opinion that she requires a structured supportive one-on-one work setting.

Finally, the ALJ said that Grenier "reported a strength of 'good at helping other people.'" Tr. 570. In fact, two Service/Treatment plans that appear to have been drafted by Gallo include the following notation: "Client Strengths: Inner strength, being a survivor, good at helping other people." Tr. 949, 951. Even if the characterization of Grenier as being "good at helping other people" is fairly attributed to Grenier herself, rather than to Gallo, an ability to help other people does not contradict Dr. Root's opinion that Grenier requires a structured supportive one-on-one work setting.

Based on the foregoing, the court concludes that the ALJ's reasons for discounting Dr. Root's opinions are unsupported by

17

the record.  As the court has explained, because Dr. Root was not a treating source, the ALJ was not required to give good reasons for discounting his opinion.  If that were the standard, the ALJ's handling of Dr. Root's opinion would plainly amount to reversible error.  See Martinage v. Berryhill, No. 16-cv-245-PB, 2017 WL 1968291, at *8 (D.N.H. Apr. 20, 2017) (describing the "good reasons" requirement).  But even if the ALJ was not required to give good reasons for discounting Dr. Root's opinion, he was obligated to support the reasons he did give with substantial evidence from the record, and his decision fails to pass muster under even that lower standard.  In light of Judge Barbadoro's previous remand for failure to address Dr. Root's opinion in the first instance, the ALJ's failure to identify substantial evidence to support the weight he assigned to that opinion in his second decision requires at least a remand.  See, e.g., Durgin v. Berryhill, No. 16-cv-451-SM, 2017 WL 3432611, at *7 (D.N.H. July 24, 2017) (remanding "[b]ecause none of the ALJ's three reasons for discounting [a consultative examiner's] opinion [were] supported by substantial evidence"), R. & R. adopted by 2017 WL 3431956 (Aug. 9, 2017); Hunter v. Colvin, No. 15-cv-421-PB, 2016 WL 6496238, at *9 (D.N.H. Oct. 13, 2016) (same), R. & R. adopted by 2016 WL 6496219 (Nov. 2, 2016).

Beyond the lack of record support for the ALJ's evaluation

18

of Dr. Root's opinion, the ALJ's evaluation of the relevant opinions contains a fundamental inconsistency. Specifically: (1) the ALJ gave substantial weight to Dr. Jamieson's opinion, see Tr. 570; (2) Dr. Jamieson gave "increased weight" to Dr. Root's opinion, and identified no aspect of that opinion that he did not credit, including the limitation to a structured supportive one-on-one work setting, see Tr. 86, 97; yet (3) the ALJ says he gave little weight to Dr. Root's opinion. Given Dr. Jamieson's endorsement of Dr. Root's opinion, along with his own limitation to work "in a simple job setting, with few social demands and reasonably supportive supervision," id. (emphasis added), it is difficult to see how, as a logical matter, the weight the ALJ gave to Dr. Jamieson's opinion did not extend to Dr. Root's opinion, especially in light of the ALJ's failure to explain how he could credit Dr. Jamieson's opinion without also crediting Dr. Root's opinion.

This case has much in common with Payne v. Colvin, No. 15-cv-274-JD, 2016 WL 8674486 (D.N.H. May 20, 2016), R. & R. adopted by 2016 WL 3351004 (June 15, 2016), which resulted in a remand. In Payne, the ALJ gave great weight to the opinion of an examining psychologist, but the ALJ did not include a significant limitation from that opinion in the RFC he assigned to the claimant. See id. at *6. Since there was no other evidence in the record to support an RFC that did not include

19

the limitation at issue, the case was "remanded because the ALJ's RFC assessment [was] not supported by substantial evidence." Id. This case presents a two-fold embodiment of the Payne scenario. The ALJ gave substantial weight to Dr. Jamieson's opinion, which gave substantial weight to Dr. Root's opinion, and each opinion included a significant limitation that the ALJ did not include in his RFC, i.e., Dr. Jamieson's limitation to working in "reasonably supportive supervision," Tr. 86, 97, and Dr. Jamieson's analogous limitation to working "within a structured, supportive setting," Tr. 338. Absent another opinion that supports an RFC that does not include a limitation to a structured supportive one-on-one work setting, and neither the ALJ nor the Acting Commissioner has identified such an opinion, the ALJ's RFC assessment is not supported by substantial evidence.

Under ordinary circumstances, the lack of substantial evidence to support the ALJ's weighing of Dr. Root's opinion, along with the Payne problem, would counsel in favor of remand. However, "a remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits." Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001) (citing Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Varney v.

20

Sec'y of HHS, 859 F.2d 1396, 1399 (9th Cir. 1988)).  Rather, as the court of appeals for this circuit has explained, "a judicial award of benefits [is] proper where the proof of disability is overwhelming or where the proof is very strong and there is no contrary evidence."  Seavey, 276 F.3d at 11 (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

The circumstances of this case warrant application of the principles articulated in Massanari and Seavey.  First, there a lack of substantial evidence to support either the ALJ's weighing of Dr. Root's opinion or his omission of Dr. Root's limitation to a structured supportive one-on-one work setting from Grenier's RFC.  Second, the court can find no evidence in the record that would support an RFC that does not include Dr. Root's limitation.  To the contrary, Dr. Root's opinion that Grenier requires a structured supportive one-on-one work setting is consistent with all seven of the other opinions in the record.  These include: (1) the 2011 DOE form prepared by Leslie Jones and Dr. Barros in which they opined that Grenier had moderate limitations in all four functional abilities;[5] (2) the 2012 DOE form prepared by Jones and Dr. Marianne Marsh in which they also opined that Grenier had moderate limitations in all

_____

    [5] As the court has already pointed out, that is a degree of limitation that denotes a need for assistance to perform adequately in each of those areas.  See Tr. 516-19.

21

four abilities; (3) the 2012 Psychiatric Evaluation by Dr. Schneider in which he opined that Grenier had moderate limitations in two of the four listed abilities and marked limitations in the other two; (4) the 2012 in opinion which Dr. Jamieson gave weight to Dr. Root's opinion and expressly identified Grenier's need for "reasonably supportive supervision," Tr. 86, 97; (5) a 2013 RFC assessment by Dr. Barros in which she opined Grenier had marked limitations in eight different abilities, see Tr. 508-12; (6) the 2014 DOE form prepared by Gallo and Dr. Barros in which they opined, consistent with the two previous DOE forms, that Grenier had moderate limitations in all four abilities; and (7) the 2016 RFC assessment by Dr. Barros in which she determined that Grenier had marked limitations in four different abilities.

Because there is no evidence to support an RFC that does not include a limitation to a structured supportive one-on-one work setting and there is overwhelming evidence in support of such a limitation, and because the VE testified that such a limitation would preclude all work, this is one of those very rare cases in which the appropriate result is not a remand but a reversal with instructions to award benefits. See Seavey, 276 F.3d at 11.

22

## IV. Conclusion

For the reasons detailed above, the Acting Commissioner's motion for an order affirming her decision, document no. 9, is denied; Grenier's motion to reverse that decision, document no. 8, is granted; and the Acting Commissioner is directed to approve Grenier's applications for DIB and SSI.  The clerk of the court shall enter judgment in accordance with this Order and close the case.

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

August 25, 2017

cc:   Bennett B. Mortell, Esq.
      Terry L. Ollila, Esq.

23